UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Mark A. D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:20-cv-322 |
| | ) |
| KILOLO KIJAKAZI [2], | ) |
| acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Mark D., on September 14, 2020. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Mark D., filed an application for Disability Insurance Benefits on January 27, 2018, alleging a disability onset date of July 11, 2017. (Tr. 20). The Disability Determination Bureau denied Mark D.'s application initially on May 4, 2018, and again upon reconsideration on August 3, 2018. (Tr. 20, 69). Mark D. subsequently filed a timely request for a hearing on August 21, 2018. (Tr. 20). A hearing was held on June 27, 2018, before Administrative Law Judge (ALJ) Terry Miller, and the ALJ issued an unfavorable decision on September 25, 2019. (Tr. 20-29). Vocational Expert (VE) Mark Cheairs appeared at the hearing. (Tr. 36). The Appeals Council denied review making the ALJ's decision the final

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

decision of the Commissioner. (Tr. 1-3).

First, the ALJ noted that Mark D. met the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 23). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Mark D. had not engaged in substantial gainful activity since July 11, 2017, his alleged onset date. (Tr. 23).

At step two, the ALJ determined that Mark D. had the following severe impairments: osteoarthritis of the bilateral knees, a history of bilateral total knee arthroplasty surgeries on September 18, 2017; moderate heel spur of the right foot; history of hypertensive chronic kidney disease, stage III; obstructive sleep apnea; and morbid obesity. (Tr. 24). The ALJ found that the above medically determinable impairments significantly limited Mark D.'s ability to perform basic work activities. (Tr. 24). Mark D. also alleged disabilities due to edema, low back pain, and gout. (Tr. 24). However, the ALJ indicated that these caused no more than a minimal limitation on his ability to engage in basic work activities, and therefore considered them as non-severe impairments. (Tr. 24).

At step three, the ALJ concluded that Mark D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 24-25).

After consideration of the entire record, the ALJ assessed Mark D.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; the claimant needs to avoid concentrated exposure to hazards, including operational control of dangerous moving

>machinery, unprotected heights, and work in or around slippery/uneven/moving surfaces.

(Tr. 25). The ALJ explained that in considering Mark D.'s symptoms he followed a two-step process. (Tr. 25). First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Mark D.'s pain or other symptoms. (Tr. 25). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Mark D.'s functioning. (Tr. 25).

After considering the evidence, the ALJ found that Mark D.'s medically determinable impairments reasonably could be expected to produce his alleged symptoms. (Tr. 26). However, he found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 26).

At step four, the ALJ found that Mark D. was unable to perform any past relevant work. (Tr. 28). The ALJ did find that Mark D. acquired work skills from his past relevant work, including the ability to use hand tools proficiently, diagnose mechanical problems, follow verbal and written instructions, and work to a set standard. (Tr. 28). The ALJ then found jobs that existed in significant numbers in the national economy that Mark D. could perform. (Tr. 28-29). Therefore, the ALJ found that Mark D. had not been under a disability, as defined in the Social Security Act, from July 11, 2017 through the date of his decision. (Tr. 29).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Mark D. has requested that the court remand this matter for additional proceedings. In his appeal, Mark D. argues that the ALJ's RFC was not based upon substantial evidence. Mark D. specifically alleges that the ALJ failed to properly evaluate his obesity, that the ALJ failed to consider other limitations in the RFC determination, and that the ALJ erred in evaluating his subjective symptoms.

Mark D. asserts that the ALJ failed to evaluate his obesity, particularly in combination

5

with his knee impairments. At step two, the ALJ found that Mark D. suffered from morbid obesity as a severe impairment. (Tr. 24). At the hearing, Mark D. testified to being 6'1" and 402 pounds, giving him a body mass index of 53. (Tr. 42).

An ALJ must "consider the exacerbating effects of a claimant's obesity on h[is] underlying conditions when arriving at a claimant's RFC." **Hernandez v. Astrue**, 277 F.App'x 617, 623-24 (7th Cir. 2008). Even when a claimant does not explicitly list obesity as an impairment in his application for disability, the ALJ still must evaluate how obesity impacts the claimant's overall condition if the ALJ was put on notice that obesity could be a relevant factor. **Clifford v. Apfel**, 227 F.3d 863, 873 (7th Cir. 2000); see also **Arnett v. Astrue**, 676 F.3d 586, 593 (7th Cir. 2012) (stating that "[a]n ALJ must factor in obesity when determining the aggregate impact of [a claimant's] impairments."). That is so because "[t]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244, at *4.

The ALJ noted Mark D.'s obesity throughout the RFC analysis. (Tr. 26). The ALJ also noted that Mark D.'s obesity "further complicat[ed]" his impairments, as "he is morbidly obese with a BMI of at least 45.77." (Tr. 26). The ALJ also noted Mark D.'s obesity when discussing his knee and foot impairment. (Tr. 26). Mark D.'s body mass index fluctuated throughout the medical records, but it was regularly noted to be between 45.77 and 53.17. (Tr. 42, 69, 80, 458, 473, 537, 546, 555, 578, 663, 780, 782, 862, 902, 906, 910, 948). There are three levels of obesity, with any body mass index over 40 being considered "extreme" obesity. Social Security Ruling 02-01p, 2002 SSR LEXIS 1. While the ALJ did acknowledge that Mark D.'s obesity complicated his knee and foot impairments, he failed to explain how the obesity impacted the RFC as well as how it impacted the limitations imposed by the knee and foot impairments. Even

if the ALJ thought that Mark D.'s obesity did not result in limitations on his ability to work, the ALJ should have explained how he reached that conclusion. The ALJ failed to explain how Mark D.'s obesity may have impacted his severe knee and foot impairments. The ALJ did not provide any analysis of how Mark D.'s obesity impacted the RFC. See *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). (finding that "[i]t is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40").

      The Commissioner asserts that Mark D. did not allege further limitations due to his obesity, that the ALJ properly found that Mark D.'s knee pain was less limiting than alleged, and that the ALJ did not ignore the effects of Mark D.'s obesity on his knee impairments. These arguments are not convincing. As an initial matter, while Mark D. does not specifically allege further limitations due to his obesity, he does allege limitations in his knees and ankles that may be affected by his obesity in combination with his osteoarthritis. As the ALJ acknowledged in his decision, Mark D. testified that he no longer could bend, stoop, or kneel. (Tr. 25). The RFC stated that Mark D. was capable of occasionally balancing, kneeling, crouching, and crawling. (Tr. 25). Yet, Mark D. stated at the hearing that he could not kneel due to both pain and the mechanics of having an artificial knee joint. (Tr. 46, 47). It also was noted throughout the medical records that Mark D. could not kneel, experienced pain when kneeling, or otherwise experienced knee pain. (Tr. 397, 403, 416, 473, 479, 480, 540, 647, 727, 736, 741). Mark D. has alleged, both in the hearing testimony and in the medical treatment notes, that he was incapable of kneeling occasionally (up to 30% of the day), and that he was incapable of bending or stooping occasionally. But the ALJ found that despite his severe obesity, osteoarthritis in his knees, and right ankle and foot impairments, Mark D. still could occasionally balance, kneel, crouch and crawl without discussing how his obesity impacted the RFC. Mark D. properly

alleged the need for further limitations and provided medical evidence to support his allegations.

The Commissioner also asserts that the ALJ properly found that Mark D.'s knee pain was less than alleged, and therefore did not need to explore how his obesity impacted his pain. This argument demonstrates how the ALJ's failure to properly consider Mark D.'s obesity also affects how the ALJ treated Mark D.'s subjective symptoms.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

>   (i)   The individual's daily activities;
>   (ii)  Location, duration, frequency, and intensity of pain or other symptoms;
>   (iii) Precipitating and aggravating factors;
>   (iv)  Type, dosage, effectiveness, and side effects of any medication;
>   (v)   Treatment, other than medication, for relief of pain or other symptoms;
>   (vi)  Other measures taken to relieve pain or other symptoms;
>   (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify his assessment with "specific reasons supported by the record." **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain h[is] [subjective symptoms evaluation] in such a way that allows [the Court] to determine whether []he reached h[is] decision in a rational manner, logically based on h[is] specific findings and the evidence in the record." **Murphy v. Colvin**, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30, 2016 SSR> LEXIS 4, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." **Ghiselli v. Colvin**, 837 F.3d 771, 777 (7th Cir. 2016); *see also* **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

In assessing Mark D.'s subjective symptoms, the ALJ found that "the claimant's

9

medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence…." (Tr. 26). Mark D. asserts that "not entirely consistent" is not the legal standard; rather, the ALJ must use the "reasonable" standard described in the regulations. (citing **20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a)**). However, under SSR 16-3p, 2016 SSR LEXIS 4, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and other evidence." SSR 16-3p, 2016 SSR LEXSI 4, at *15, 2016 WL 1119029, at *8, *see also* **20 C.V.R. §§ 416.929(a)**. Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See* **Robert v. Berryhill**, 2018 U.S. Dist. LEXIS 162365, 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see generally* **Parker v. Astrue**, 597 F.3d 920 (7th Cir. 2010). The court will look to the totality of the ALJ's discussion of a claimant's subjective symptoms.

In finding Mark D.'s subjective symptoms not entirely consistent with the evidence, the ALJ relied on medical notes that state Mark D. "frequently denied knee pain, had a normal gait, normal strength and tone, and 5/5 power." (Tr. 26). The ALJ also relied on one note showing no musculoskeletal pain, significant improvement, no swelling, but "some mild effusion and mild edema," as well as on Mark D.'s plans to go on vacation and his ability to ride a motorcycle in dismissing his complaints of pain. (Tr. 26). Finally, the ALJ noted that the imaging of Mark D.'s knees showed anatomic alignment, well-fixed implants, and that his clinician indicated no restrictions were needed. (Tr. 26).

An ALJ must "articulate at some minimal level her analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings." **Zurawski v. Halter**, 245 F.3d 881, 887 (7th Cir. 2001); **Suetkamp v. Saul**, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27,

2019). An ALJ "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding." **Reinaas v. Saul**, 953 F.3d 461, 466 (7th Cir. 2020) (finding that the claimant cannot "prevail by arguing that the ALJ improperly weighed the evidence" but can prevail if the "ALJ overlooked entire swaths of it"). Therefore, "an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." 406 F.Supp.3d at 719 (citing **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003)).

The ALJ erred in failing to consider the totality of Mark D.'s alleged subjective symptoms. The ALJ focused on Mark D.'s failure to note current pain during medical appointments, but the ALJ failed to consider his complaints that activity and kneeling caused him increased pain. The ALJ did not account for Mark D.'s continued statements that he could not kneel and that kneeling was painful and difficult due to his knee replacement. (Tr. 47). Mark D. reported to his orthopedist that although he was not currently having knee pain, that activity caused him some pain. (Tr. 738). Moreover, his orthopedist noted restricted range of motion, mild edema, and mild effusion in both knees. (Tr. 738). Mark D.'s physicians noted that he continued to have "issues with his knees" and that he no longer was able to kneel. (Tr. 578, 736). The RFC states that Mark D. can kneel "occasionally," which is up to a third of the workday, but the ALJ did not explained how he found that Mark D. could kneel for a third of the workday despite multiple indications that he could not kneel. (Tr. 578, 736). While the ALJ was correct in finding that Mark D. did not always complain of current knee pain to his physicians, he still suffered from an inability to kneel, and continued activity caused him knee pain. The ALJ did not build a logical bridge from the evidence to his conclusion.

Mark D. also testified to increased, chronic right ankle pain due to a bone spur inside the joint. (Tr. 51). Mark D. stated that he would need to have surgery to fix it, that it would require

11

"be[ing] down" for six to eight weeks, and that he is unwilling to undergo the surgery due to the complexity of the surgery. (Tr. 51-52). He testified that if he were walking, his right foot/ankle would hurt the most, and he could not stand or walk for long periods of time. (Tr. 53-54). He also testified that he occasionally used a cane if his ankle was particularly painful. (Tr. 54). He testified that gout in his right foot caused him pain that could last for days at a time. (Tr. 56-57). Mark D.'s physicians noted his right ankle pain and right osteochondropathy. (Tr. 751). A 2017 CT scan showed mild osteoarthritis, "probable split tearing of the tibiatis posterior distally," and a moderate heel spur. (Tr. 751). The ALJ did not consider Mark D.'s ankle pain or how his obesity increased his right ankle and right foot pain, but instead focused solely on his knee pain. Therefore, the ALJ has impermissibly cherry-picked evidence to support his conclusion without considering the evidence to the contrary. **Denton v. Astrue**, 596 F.3d 419, 425 (7th Cir. 2010); **Scott v. Astrue**, 647 F.3d 734, 740 (7th Cir. 2011).

Lastly, the ALJ relied on Mark D.'s ability to ride his motorcycle and go on vacation as evidence that he was not in as much pain as alleged. However, the medical record that the ALJ cited to was from June 2018, and it merely stated that Mark D.'s back felt better after riding his motorcycle and that he planned on riding his motorcycle again in the summer. (Tr. 713). Mark D. clarified at the hearing that he did not ride as much as he used to, as riding for long distances causes his feet to swell up. (Tr. 59). The ALJ failed to explain how Mark D.'s ability to go on vacation (of unknown activity levels) and ride his motorcycle occasionally contradicted his complaints of pain. A claimant's ability to do hobbies that bring him joy, even in a limited fashion, is not indicative that he is not in pain or that he could perform a full-time job. "The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other

persons …, and is not held to a minimum standard of performance, as [he] would be by an employer." **Bjornson v. Astrue**, 671 F.3d 640, 647 (7th Cir. 2012).  As a result, the court finds that the ALJ erred by failing to consider Mark D.'s obesity in combination with his lower extremity impairments both in the RFC and subjective symptom determination.

Mark D. makes other arguments regarding his subjective symptoms and the RFC.  However, because the ALJ erred in considering Mark D.'s obesity, specifically in combination with his knee and ankle impairments as well as in considering his subjective symptoms, the Court need not address the other arguments at this time.  A full analysis of Mark K.'s obesity and how it contributes to his other impairments and subjective symptoms may alter the RFC.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 31st day of August , 2021.

/s/ Andrew P. Rodovich  
United States Magistrate Judge